## FRANKLIN FIRE INS. CO. v. BRITT.
### (No. 2764.)

(Court of Civil Appeals of Texas. Texarkana.
May 31, 1923. Rehearing Denied
June 14, 1923.)

1. Insurance ⊗══282(1)—Principal may sue and recover on insurance policy taken by agent in his own name.

T., as agent of B., having taken out an insurance policy on a car of which B. was sole owner, B. could sue and recover on it, though it was taken in T.'s name, and was conditioned against liability if assured was not sole owner.

2. Insurance ⊗══558(2)—Delay in making written proofs of loss held not fatal to recovery.

In view of Rev. St. art. 5714, as to requirement in contract of notice of claim of damages as a condition to right to sue, recovery on a theft policy, requiring written proofs of loss in 60 days of loss, is not defeated because such proofs were not made till 98 days after theft; insurer having had immediate actual notice of the theft, and insured having been told by the adjuster to defer proceeding for adjustment till after the investigation of 60 days to recover the car.

⊗══For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**3. Insurance ☞665(3)—Misrepresentations in procuring policy precluding recovery held not shown.**

In view of testimony of insurer's agent, in action on theft policy on automobile, that at time of application he saw and inspected the car, and judged it was in good condition, and considered it a good risk for $600, the amount of the policy, *held,* the evidence did not warrant conclusion that such fraud or misrepresentation was practiced by insured, in regard to the value, as to preclude any recovery.

Appeal from District Court, Tarrant County; Bruce Young, Judge.

Action by T. B. Britt against the Franklin Fire Insurance Company. Judgment for plaintiff, and defendant appeals. Affirmed.

This suit was by the appellee against the appellant to recover on an automobile insurance policy covering loss by fire or theft. The appellant generally demurred and set up special exceptions to the petition, entered a general denial, and specially pleaded as a defense: (1) A provision in the policy that same should be null and void if the interest of the assured in the automobile be other than unconditional and sole ownership, and that J. T. Britt, the assured, was not the owner; (2) that notice had not been given of the proof of loss required by the terms of the policy; and (3) that it was represented by the assured that the automobile was new and had cost $800, whereas the automobile was second hand and was procured by the assured at a cost not in excess of $350.

The case was submitted to a jury on special issues. The jury made the findings of fact that: (1) The automobile was stolen July 21, 1921; (2) at the time the automobile was stolen it was of the market value of $450; (3) at the date of the issuance of the policy and at the time of the theft T. B. Britt was the actual owner of the automobile. The following special issue submitted and the answer of the jury thereto is set out in full, viz.:

"Q. Immediately prior to or at the time of the taking of the application for the insurance policy introduced in evidence did J. T. Britt tell Victor Peek, the agent of the defendant company, that the car upon which he desired to take a policy of insurance was the property of his son, T. B. Britt? A. Yes."

In accordance with the verdict of the jury, the court entered judgment in favor of T. B. Britt for $450.

The petition, as material to state, alleged:

"That heretofore, to wit, on August 20, 1920, this plaintiff by and through his agent J. T. Britt negotiated with this defendant for the purpose of procuring a policy of automobile insurance on his automobile; that the agent of this defendant was —— Keifner; that the plaintiff's agent was his father, J. T. Britt; that on said date this defendant, at the instance and request of this plaintiff, executed to him its policy. [Here follows description of same.] Plaintiff would further show that the defendant by its agent —— Keifner was informed that said automobile belonged to this plaintiff; the said J. T. Britt further informed said Keifner that he had no interest in said car; that he was securing this policy for the use and benefit of his principal T. B. Britt, his son; that the defendant well knew that said policy of insurance was to cover the automobile of this plaintiff; that the defendant company was paid a premium of $24.30, the amount required for the issuance of the policy, out of funds belonging to the said T. B. Britt."

J. T. Britt is the father of T. B. Britt, and they lived together at the same house, and worked together at the same trade. The father and son both testify that T. B. Britt was the sole owner of the automobile in suit. The agent of the appellant came to the house soliciting insurance on the automobile. At the time the agent came to the house J. T. Britt was there, and T. B. Britt came in from his work shortly afterwards. J. T. Britt testified:

"At the time the insurance agent came to my house, where me and my son stayed, he said, 'I am hunting a place where they have a car that hasn't any insurance on it;' and I said, 'Well, there is one here that hasn't any insurance on it, but the car isn't here; you wait until the car comes in; the boy will be in from work directly.' As we got on the porch I said, 'There is the boy and his car.' The boy jumped out of the car and came into the house, and as the boy passed us, going to his room, the agent said to him, 'We are about to take out insurance on your car.' My son said, 'It's all right with me what he does;' and he went on in the room, changed his clothes, and came out and got in the car and left. The insurance agent saw the automobile. I signed an application for insurance on the car. The agent said, 'You sign this and I will fix up the policy.' I asked him if I should sign my boy's name or my own, and he said, 'You are writing it, sign your own.' I told the agent whose car it was; that it belonged to my son, T. B. Britt. Later on I received the policy of insurance. I wrote a check covering the premium on the policy. My son would turn money over to me and I would deposit it in the bank, and I gave the check on this account when the policy was delivered."

T. B. Britt testified that he was the owner of the automobile; and that he paid $350 for it, and had it repaired, painted, the engine overhauled, and new tires put on it; that he authorized his father to insure it for him.

The soliciting agent of the appellant testified, as material to state, as follows:

"At the time I took the application for this policy Mr. J. T. Britt told me that the car belonged to him. At the time I did not know T. B. Britt at all. Mr. J. T. Britt did not indicate in any manner that his son T. B. Britt owned the car. When I was there talking to J. T. Britt, his son T. B. Britt came up in the car, went in the house and changed cloth-

ing, and then went right out again. I saw the car at that time. I inspected the car, and I judged it was in good condition; I considered it a good risk for $600 at that time; it looked like it had been used about six or eight months at that time."

The policy issued and delivered was dated August 20, 1920, and insured the automobile in suit against loss by theft or fire from noon, August 20, 1920, to noon, August 20, 1921. The amount of the insurance was $600. The policy states the following:

"(1) Name of assured: J. T. Britt.

"(2) Address of assured: 204 E. Central Str., Fort Worth, Texas. Assured's occupation: Carpenter.

"(3) The facts with respect to the purchase of the automobile are: Purchased Nov., 1919, new. Actual cost to assured, including equipment, $800.00."

It is a condition in the policy that the company shall not be liable:

"C. If the interest of the assured in the property be other than unconditional and sole ownership, or if the subject of this insurance be or become incumbered by any lien or mortgage except as stated in warranty No. 3, or otherwise indorsed hereon."

Written proof of loss was made to appellant, on its regular blanks, October 27, 1921, signed by J. T. Britt and T. B. Britt. The proof of loss was sworn to before a notary public by J. T. Britt. In the proofs of loss the following appears:

"At the time of loss said automobile was in charge of: T. B. Britt, son of J. T. Britt. Was used as follows: Pleasure car. The said automobile and equipment belonged at the time this insurance was effected to T. B. Britt and belonged at the time of the loss to T. B. Britt; and no other person or persons had any interest therein except: None."

The policy by its terms makes the "claim null and void" upon failure on the part of the assured to render "sworn statement of loss to the company within sixty days of the date of loss, unless such time is extended in writing by the company." The trial court makes the finding of fact that formal proof of loss was waived by the company.

Burns, Christain, Gumm & Gordon, of Fort Worth, for appellant.

Hunter, Hunter & Stewart, and Chas. B. Stewart, all of Fort Worth, for appellee.

LEVY, J. (after stating the facts as above). [1] The facts conclusively show that T. B. Britt was the sole owner of the automobile, and that J. T. Britt was only acting as the agent of T. B. Britt in making the contract of insurance. The evidence is conflicting as to whether or not the insurance company, acting through its soliciting agent, had knowledge of the agency at the time of making the contract of insurance. Can T. B. Britt sue upon the policy and prove by parol evidence that the indemnity was made for his benefit? Under the law of agency, where an agent, in making a contract, acts in his own name, and does not disclose the name of his principal or the existence of an agency, in such case the agent becomes, as to the third person, the real contracting party, and therefore has a right of action on the contract, although the principal may also sue thereon in his own name. Tinsley v. Dowell, 87 Tex. 23, 26 S. W. 946; Texas Overall Co. v. Mummert (Tex. Civ. App.) 157 S. W. 219; Allison v. Phœnix Assurance Co., 87 Tex. 593, 30 S. W. 547; Hunter v. Adoue and Lobit, 38 Tex. Civ. App. 542, 86 S. W. 622; Life Assurance Society v. Farquhar et ux., 75 Wash. 667, 135 Pac. 619. As stated in Kempner v. Dillard, 100 Tex. 505, 101 S. W. 437, 123 Am. St. Rep. 822.

"We are unable to see anything in this case to take it out of the ordinary rule that the contract of an agent, who deals in his own name without disclosing that of his principal, is the contract of the principal. The party contracted with may sue the principal for the enforcement of the contract, when he learns that the agent was acting for another, and so the principal may sue the third party to enforce his rights under the contract, subject to any equities of such party as against the agent. Where the agent buys property in his own name, his principal being undisclosed, it immediately becomes the property of the principal, and not that of the agent."

It is concluded that T. B. Britt could sue upon and enforce the contract in his favor upon proof that J. T. Britt was acting as his agent. J. T. Britt admits that he was not the owner and had no interest in the insured automobile, and was acting merely as agent of T. B. Britt. While appellant did not offer, as it could have done, to make J. T. Britt a party defendant, yet J. T. Britt would nevertheless be estopped in this record from recovering on the policy. The assignments are overruled.

[2] It is believed that in view of article 5714 of the statutes, and the decisions thereunder, the appellee would not be denied a recovery herein merely because the written proofs of loss were made on October 27, being 98 days after the date of the theft of the automobile. There is involved in the court's judgment the finding that the proofs were made in writing within a reasonable time. It appears that appellant had actual notice of the loss at the time the theft occurred, and, acting on such actual notice given by the appellee, proceeded to make investigation and effort at recovery of the automobile. This investigation continued for 60 days, and the appellee was told by the adjuster to wait that length of time to see if the stolen car could be recovered before proceeding to any adjustment under the terms of the policy. The propositions are overruled.

[3] The evidence does not warrant the conclusion that such fraud or misrepresentation

was practiced upon the appellant in regard to the value of the automobile as would operate to deny any recovery on the claim in suit. The agent testified that at the time he took the application for the insurance he "saw" and "inspected" the automobile and "judged it was in good condition." The agent further testified, "I considered it a good risk for $600 at that time."

There being no reversible error, the judgment is affirmed.